RATHBONE v. DETROIT UNITED RAILWAY.

1. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.
   Where a requested instruction was fully covered in the charge as given, there was no error in its refusal.

2. RAILROADS—CROSSING—WARNING.
   In operating a heavy motorcar at a rate of 50 or 60 miles per hour, there would rest upon the company the common-law duty to give notice of its approach to a crossing.

3. TRIAL—NEGLIGENCE—INSTRUCTIONS.
   An instruction dealing with the negligence of two defendants, where the court had previously instructed that one defendant was guilty as a matter of law, and leaving the question of the negligence of the other defendant to the jury, *held*, not misleading.

4. DAMAGES—EXCESSIVE VERDICT—EXPECTANCY.
   Where, at the time of the trial, eight years after his injury, plaintiff was 84 years of age, and still had an expectancy of more than three years, considering the pain and suffering he has endured, and his loss of earnings of $900 per year, it cannot be said that a verdict for $11,000 was excessive.

Error to Wayne; Codd, J. Submitted October 8, 1918. (Docket No. 14.) Decided December 27, 1918.

Case by William Rathbone against the Detroit United Railway and another for personal injuries. Judgment for plaintiff. Defendant railway brings error. Affirmed.

*Corliss, Leete & Moody* (*William G. Fitzpatrick,* of counsel), for appellant.

*James H. Pound,* for appellee.

BROOKE, J. This case was once before in this court and is reported in 187 Mich., at page 586, where a sufficient statement of the facts will be found. A second trial has again resulted in a verdict in favor of the plaintiff, this time in the sum of $11,000 and

See notes in 15 L. R. A. 426; L. R. A. 1915F, 30.

against both defendants. It is again reviewed in this court under assignments of error grouped by counsel for appellant as follows:

*a.* Refusal to charge as requested.
*b.* The charge as given.
*c.* Overruling defendant's motion for a new trial.

Error is assigned upon the failure of the court to give defendant's fourth and fifth requests to charge as follows:

"If the jury believes that the road roller did not start to come upon or towards the track until such time as the car was within the distance from the crossing in which it was possible to stop, then defendant would not be shown to be negligent on the ground of having failed to control his car and avoid the collision. * * *

"If his track was clear and there was nothing in the situation, position or movement of the road roller to suggest danger to the motorman until such time as he got so close to the crossing as to render it physically impossible to stop before reaching it, the speed of his car considered, then the motorman would not be held negligent in failing to stop his car in time to avoid the collision; neither would the speed of his car, if lawful and proper, before the obstruction or danger became apparent, be rendered negligent and improper by reason of the fact that he could not stop the car in the distance intervening."

The court charged the jury at great length in part as follows:

"It is their duty, gentlemen of the jury, to operate their cars, to have their servants operate those cars with due consideration of all of the circumstances surrounding that operation. If they exercised their functions in the same way that pertains to railroad companies generally, furnish its road and run it in the customary manner, which is found to be safe and prudent, they did all that is incumbent upon them and performed that degree of care required to be exercised toward or received by passengers upon steam railroads, they did all that is required.

"Now, gentlemen of the jury, there is a little variance in the testimony as to the speed of the car at the time of the collision. That is, the speed at which it was operated. The business of the country demands of railroads, rapid transit of persons and property, and it cannot be said that the speed which has been testified to in this case is of itself as a matter of law, a negligent speed when running through the country outside of villages or cities or other thickly settled communities. It is, however, your duty to take into consideration all of the circumstances surrounding the operation of the car at the time in question. It is for you to say as a matter of fact, whether or not the speed of the car was such a speed as a careful and prudent person would have used under all of the circumstances surrounding the case. You have heard the testimony, and considerable testimony has been brought to your attention in that respect, as to the condition of the track, regarding highways and crossings and all other matters, the foliage upon either side of the track. All of these matters. It is for you to say from that testimony, taking that testimony and the evidence which you believe to be controlling and the circumstances at the time in question, as to whether or not the speed of the car was such a speed as a careful and prudent person would have used, under the circumstances in question. If you find that it is such a speed as would be used by a careful and prudent person in the operation of a car at that time and place, then that act cannot be an act of negligence on the part of the servant of the defendant company, and the defendant company is absolved from all liability resulting therefrom. A person in the operation of a highly speeding object in going through woods and over public highways must exercise the care that such conditions require, and the question for you to find out is, Did the servant of the defendant company do that? If he did, he discharged his duty, and if he did not and if by reason of his failure to discharge his duty or to act in this respect as a prudent and careful person would do, under all of the circumstances, the plaintiff is entitled at the hands of the defendant, to recover for his full damages, if damage resulted to him by reason of this fact. Now, gentlemen of the

jury, the defendant carrier is not an insurer of the safety of its passengers, and it can only be held liable for injuries caused by its negligence, and under the evidence in this case, the question of the defendant carrier's liability is to be determined by the rules which govern the operation of steam railways in the open country rather than by rules governing the operation of cars in the streets and highways of cities, villages or thickly populated communities. No presumption of negligence arises because of the happening of the accident and plaintiff's injury and the burden of proof rests upon the plaintiff to show that the defendant railway company was negligent. The railway company had the right to operate its cars at a high rate of speed and the rate of speed alone is not in and of itself negligence. Interurban cars are not limited in the rate of speed that they may run across highways, provided proper care is taken in approaching the same. As I say, they have a right to operate cars at a high rate of speed and the rate of speed alone is not in and of itself negligence, but is to be determined in the light of all of the circumstances surrounding the case. The motorman in approaching the highway crossing had a right to believe that any person intending to use the highway for the purpose of crossing the track, would use reasonable care and caution to ascertain and determine whether or not a car was coming. It appears from the testimony in this case that the car, the car upon which the plaintiff was riding, if going at the rate of 50 miles an hour could not be stopped in less than 950 or 1,000 feet and that when going faster more distance would be required to make the stop. After you have determined the rate of speed at which the car was going, you will then have to determine the distance from the crossing that the motorman had a view of the same, and if you believe from the evidence that the length of view was sufficient to enable the motorman to stop his car so as to avoid striking any obstacle which was on or in dangerous proximity to the track at the time the observation was made, and that no such obstacle was on or in dangerous proximity to the track at such time, then I charge you, gentlemen of the jury, that the motorman had the right to continue on toward the

crossing without slackening speed, in reliance on the belief that no one would proceed on or near the track until his car had passed the crossing, and if on reliance in such belief, the motorman got so near the crossing before he saw, or by the exercise of a high degree of care, he should have seen the danger, that it was practically and physically impossible for him to stop his car, then he would not be negligent and plaintiff could not recover against the railway in this case. If the jury believe that the motorman saw or should have seen the driver of the traction engine when he went on or approached the track, if they believe the driver did so, the motorman had a right to believe and to act upon the belief that the driver would not undertake to drive his train on or over the track until the car had passed the crossing, and if the motorman saw or should have seen the traction engine standing still at a safe distance from the track, he had a right to believe that it would remain stationary and that it would not be driven upon the track before the car passed the crossing. The motorman under such circumstances could not be required to check or slacken the speed of his car in anticipation of any act of control of the engine which would cause it to leave a place of safety and go into a place of danger in or near the track ahead of the car, and if while so operating his car he got so close to the crossing before he saw, or should by the exercise of due care and caution have seen that the engine was proceeding toward the track, as to make it impossible to stop the same by the use of every possible means and device at hand before striking the engine, then I charge you, gentlemen of the jury, that the motorman could not be held to have been guilty of any negligence and the plaintiff could not recover against the railroad company.

"In approaching a crossing the duty rests upon the person operating a car to give warning.   *   *   *

"I think I have already in the other requests which I have given or charges which I have made, covered the fourth request asked for by the defendant. Now, gentlemen of the jury, if the track was clear and there was nothing in the situation, position or movement of the road roller to suggest danger to the motorman

until such time as he got so close to the crossing as to render it physically impossible to stop before reaching it, the speed of his car considered, provided you find that such speed was the proper speed under all of the circumstances surrounding the operation of the car, then the motorman would not be held negligent in failing to stop his car in time to avoid the collision, and neither would the speed of his car, if lawful and proper before the obstruction, or danger became apparent, be rendered negligent and improper by reason of the fact that he could not stop the car in the distance intervening. * * *

"Now, as you have heard, there is a dispute as regards the responsibility in this case. It is as you know, the duty of the plaintiff himself to assume the burden of proof to show the acts of negligence upon the part of either one or both defendant companies. The form of your verdict in this case, unless the plaintiff has satisfied you by a fair preponderance of evidence that this accident was caused by negligence on the part of either one of the defendants, would be no cause of action. If you find that it was caused by an act of negligence upon the part of either one of these defendants you will so indicate by finding a verdict in favor of the plaintiff and against either one of the defendants that you find is liable therefor under the rules of law which I have pointed out, or against both of them, if you find that they are both negligent in the operation of those vehicles at the time in question. Now, if you find that this damage was caused by an act of negligence on the part of either one solely, you are so to indicate and find a verdict in favor of the plaintiff against that defendant that you find to be negligent and if you find the other defendant was not negligent you will find a verdict of no cause of action or not guilty as against that defendant. You can find a verdict for the plaintiff as against either of the defendants or against both of them, but you cannot find separately. If you find against both of them you cannot separate the responsibility. If you find from the evidence in this case that both defendants were guilty of negligence, which proximately caused the accident in question, then you will find for the plaintiff against both of the defendants and award the plaintiff such

sum as against both of the defendants as you find from the evidence he has suffered by reason of the accident. But there can be no separation or degree of liability, as to the two joint defendants. If both have been guilty of the negligence which you find from the testimony, your duty will be to return a verdict in such sum as you believe will fully compensate the plaintiff for the injuries received and the damages he has sustained, but it must be one verdict as against both of the defendants. If you find for the plaintiff, you will, of course, assess the amount of his damages. If you find that one—that the negligence of one of these defendants was the proximate cause, as I stated before, and that the other defendant, through its agent did not commit an act of negligence which was the proximate cause of the accident, then you will return against that defendant in such a sum as you find the plaintiff has been damaged by reason of the accident the amount which you find to be his damages and against the other defendant which you find is not guilty, no cause of action. I trust I have made myself clear upon that point.  *  *  *

"*The Court:* My attention has been called to certain testimony given in this case with regard to the operation by the defendant, the Good Roads Construction Company, of the roller at the time in question. I find that the testimony is undisputed that there was but one person upon the roller; that there was no pilot upon the road roller as required by the statutes of this State. The statute of this State requires that a steam engine of this kind must have, in operating upon a public highway, must send ahead a person to give warning of the approach of a vehicle, that the lack of this constitutes negligence. That testimony is undisputed. Therefore, gentlemen of the jury, I charge you that the act of the driver of the roller, was an act of negligence as a matter of law in the operation of that road roller without a pilot as required by the statute in this State. I think that covers the principles that are applicable to the case and you may follow an officer."

A careful examination of that portion of the charge first above quoted convinces us that the substance of

the fourth request to charge was fully covered in the charge as given. The court gave the fifth request verbatim, but interpolated the words:

"provided you find that such speed was the proper speed under all the circumstances surrounding the operation of the car,"

as appears from the second excerpt above set out. We are of opinion that the qualifying language was proper under the evidence introduced and the issue presented.

Error is assigned upon that portion of the charge in which the court said:

"In approaching a crossing, the duty rests upon the person approaching to give warning,"

—and in this connection it is asserted that at the time the accident occurred there was no statute covering the subject and that therefore at most the question of whether a warning should have been given was one of fact for the jury. We cannot agree with counsel for appellant in this claim. In operating a heavy motor car at a rate of 50 or 60 miles per hour there would surely rest upon the company the common law duty to give notice of its approach to a crossing. The whole tenor of the charge is such as to impose upon the defendant the duty only to:

"furnish its road and run it in the customary manner which is found to be safe and prudent,"

and to exercise:

"that degree of care required to be received by passengers upon steam railroads."

We are of opinion that no error was committed by the court in the use of the language to which exception was taken.

Error is assigned upon the third excerpt of the charge above quoted. The criticism of this portion of the charge is that the language was, "unhappy and

confusing to the highest degree." This view is not so apparent to the court as it is to counsel. A former verdict was set aside because of an attempt on the part of the jury to apportion the damages between the two defendants and the court apparently took extra precautions to avoid such an error on the part of the jury on the second trial. We do not think the jury could have been misled by what was there said. It is true that the last excerpt above quoted tells the jury that the defendant Good Roads Construction Company is guilty of negligence as a matter of law. Had the court had this fact in mind when delivering that portion of the charge to which exception is taken it is likely that a somewhat different instruction would have been given, and one to the effect that the plaintiff must recover in any event against the Good Roads Construction Company, and could only recover against both defendants in case the railroad company was found to be negligent. Taking the instructions together, however, we are impressed that the question of the negligence of the railroad company was the important question for the determination of the jury, and that that was submitted under instructions entirely fair to that defendant.

Error is assigned on the refusal of the court to set aside the verdict for various reasons and among others that the verdict was excessive. When the case was in this court before under the record as it then stood, a majority of the Judges sitting were of opinion that a verdict for $10,000 was excessive. At the time of plaintiff's injury he was in his 77th year and had an expectancy of life of about 5½ years. At the time of the last trial in 1917, which was nearly eight years after his injury, he was about 84 years of age and still had an expectancy of life of upwards of 3 years. Aside from the fact that the record upon this trial, on the question of earnings, is fuller than that

upon the first trial, it is apparent that plaintiff by continuing to live far beyond his expectancy, according to the mortality tables, has demonstrated his right to recover for pain and suffering endured, at least up to the date of the last trial. Under the evidence in the record as it now stands upon the question of earnings and because of the lapse of time between the accident and the trial here under consideration, we are unable to say that the damages awarded are excessive.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.