OAN HENRY ROSE, appellee, v. JOHN DEERE OTTUMWA WORKS, a division of Deere Manufacturing Company, appellant.

No. 48935.

(Reported in 76 N.W.2d 756)

902

MAY 9, 1956.

Jones, White, Starr & Johnson, of Ottumwa, for appellant.

Samuel O. Erhardt, of Ottumwa, for appellee.

GARFIELD, J.—This is a proceeding under the Workmen's Compensation Law, chapters 85, 86, Code, 1954, by an injured

employee for increased compensation, pursuant to section 86.34. Following a hearing the deputy industrial commissioner made an award from which defendant-employer appealed to the district court. From its judgment affirming the award defendant has appealed to us.

Both in the district court and here defendant has assailed the deputy commissioner's order on two grounds: (1) the facts found by him do not support his order and (2) there is not sufficient competent evidence in the record to warrant making the order. See Code section 86.30.

In passing on the second of these grounds, which we think is the stronger, we must consider the evidence in the light most favorable to plaintiff. Pohler v. T. W. Snow Constr. Co., 239 Iowa 1018, 1021, 33 N.W.2d 416, 418, and citations; Alm v. Morris Barrick Cattle Co., 240 Iowa 1174, 1175, 38 N.W.2d 161, 162; Brewer v. Central Constr. Co., 241 Iowa 799, 801, 43 N.W.2d 131, 133.

Plaintiff, age 47 in December 1954, commenced work for defendant in its Ottumwa plant February 7, 1951. On July 7, 1953, he suffered an injury to his back arising out of and in the course of his employment when he slipped as he was taking a shell weighing 115 to 130 pounds off a conveyor belt. He was hospitalized a week and unable to return to his work until September 28 (1953). He then resumed his duties as a conveyor tender until December 23 but in the meantime defendant had installed a hoist which made manual lifting of the heavy shells unnecessary. Plaintiff and others in his department were then laid off a short time for lack of work. When plaintiff returned to his employment he was given lighter work in the paint shop. After three or four months he was also required to shovel steel shavings about three hours a day.

Plaintiff's back pained him so he was unable to continue his work and July 26, 1954, he went to a hospital at Bloomfield for about 17 days when he was released for light work. Defendant had no such work for plaintiff until November 21 when he returned to his employment where he was working at the time of the hearing before the deputy commissioner December 28, 1954.

During the 11 weeks and five days after plaintiff's injury on July 7, 1953, he received workmen's compensation totaling $328 and $180 was paid in medical benefits. So far as the record shows no award or settlement agreement was made but the amounts were voluntarily paid and received. It seems clear the payments were made for, and on the assumption there was only, temporary disability. August 19, 1954, plaintiff filed with the commissioner his application for review under Code section 86.34 asking such award as he may be entitled to. The application as amended alleges plaintiff is "now suffering from permanent partial disability" as a result of his injury of July 7, 1953.

Following a hearing the deputy commissioner filed his decision, reviewing much of the evidence and finding as facts: "It is clear claimant has some permanent partial disability as a direct result of this injury of July 7, 1953. * * * After taking into consideration all * * * evidence submitted, with all reasonable inferences therefrom, it is found as a fact that as a direct result of the injury (of July 7) claimant is permanently disabled to the extent of ten per cent of the whole body." Compensation was allowed of $28 per week for 50 weeks, plus a healing period of 12½ weeks as provided by law, less 11 weeks and five days previously paid, leaving a balance of 51 weeks ($1428 in all).

Code section 86.34 provides: "Review of award or settlement. Any award for payments or agreement for settlement * * * where the amount has not been commuted, may be reviewed by the industrial commissioner or a deputy commissioner at the request of the employer or of the employee at any time within three years from the date of the last payment of compensation * * *, and if on such review the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation so awarded or agreed upon. Any party aggrieved by any decision or order of the industrial commissioner or a deputy commissioner on a review of award or settlement * * *, may appeal to the district court * * * in the same manner as is provided in section 86.26."

There is no suggestion this statute is not applicable here on the ground the compensation for the 11 weeks, five days may not have been paid under an award or agreement for settlement and such circumstance is entitled to no consideration. Of course there

may have been an award or settlement agreement not shown by the record.

Section 86.34 is very broad and general in its terms. It authorizes relief "if * * * the commissioner finds the condition of the employee warrants such action." Stice v. Consolidated Indiana Coal Co., 228 Iowa 1031, 1035, 291 N.W. 452, construes this language perhaps somewhat more narrowly than it calls for. The Stice opinion says the statute ordinarily is applicable only where there is some change in the employee's condition as a result of the injury, since the award was made. See also Bever v. Collins, 242 Iowa 1192, 1195, 49 N.W.2d 877, 879. We have no occasion to re-examine the Stice case now and may accept its interpretation of section 86.34.

It is doubtless true, as stated in Stice v. Consolidated Indiana Coal Co. (at page 1038 of 228 Iowa, page 456 of 291 N.W.) that a decision on review pursuant to 86.34 depends upon the condition of the employee found to exist subsequent to the date of the award under review. Numerous precedents under somewhat similar statutes so hold. It is equally clear, as the Stice opinion indicates (at page 1036 of 228 Iowa, page 455 of 291 N.W.), an injured employee is entitled to relief under statutes similar to 86.34 upon " 'substantial proof of an aggravated condition of the old injury not taken into account in the former findings * * *'." To the same effect is 71 C. J., Workmen's Compensation Acts, section 1401.

Oldham v. Scofield & Welch, 222 Iowa 764, 767, 266 N.W. 480, 481, 269 N.W. 925, holds: "Where an employee suffers a compensable injury and thereafter returns to work and, as a result thereof, his first injury is aggravated and accelerated so that he is greater disabled than before, the entire disability may be compensated for [citations]."

It seems to be well settled in other jurisdictions that increased incapacity of the employee, due to the original injury, subsequent to the making of the first award entitles the employee to additional compensation under such statutes as 86.34. See 58 Am. Jur., Workmen's Compensation, section 501; 71 C. J., Workmen's Compensation Acts, section 1405; annotations 122 A. L. R. 550, 582 et seq.

Although we are now concerned only with an employee's claim to increased compensation we may observe that section 86.34 protects the employer as well as the employee—rights under it are mutual. The commissioner may, if he finds the employee's condition warrants such action, end or diminish compensation previously awarded as well as increase it.

■ It follows from what we have said that where compensation is paid for temporary disability from an injury and it later develops that permanent partial disability results from the injury an additional award may be made under section 86.34. See Cowell Lime & Cement Co. v. State Industrial Acc. Comm., 211 Cal. 154, 294 P. 703, 72 A. L. R. 1118, 1123 (where compensation was voluntarily paid by the employer without an award), and annotations 1125; Wicko v. Ford Motor Co., 292 Mich. 335, 290 N.W. 818; Amerada Petroleum Corp. v. Williams, 134 Okla. 177, 272 P. 828. See also Walker's Case, 122 Maine 387, 120 A. 59; Tucker v. Frank J. Beltramo, Inc., 117 N. J. Law 72, 186 A. 821, 825. An extended annotation in 165 A. L. R. 9 discusses numerous decisions in proceedings to review previous awards.

Cowell Lime & Cement Co. v. State Industrial Acc. Comm., supra (at page 160 of 211 Cal., page 705 of 294 P., page 1123 of 72 A. L. R.), contains this language applicable here: "Many times the seriousness of the injury is not at first apparent, and from its very nature cannot be detected until considerable time has elapsed after its infliction. The clear intent of the statute in such cases is that the injured employee shall be entitled to compensation for his permanent disability notwithstanding the fact that he may in the early stages of his injury have been granted an award only for temporary disability, or may have been paid compensation voluntarily by his employer; * * *."

Application of the above rules to the present controversy leads to the conclusion that if there is substantial proof plaintiff suffered permanent partial disability from the injury of July 7, 1953, he is entitled to compensation therefor in addition to the payments defendant concedes were for temporary disability during the initial period of 11 weeks, five days.

■ Defendant's first contention that the facts found by the deputy commissioner do not support his order is without merit.

As previously stated, his decision reviews much of the evidence and finds "as a fact that as a direct result of the injury (of July 7) claimant is permanently disabled to the extent of ten per cent * * *." This finding, together with other recitals in the deputy's decision, supports his order and is sufficient to determine the controversy.

It is well settled that findings of a court are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt they will be construed to uphold, rather than to defeat, the judgment. Wherever, from the facts expressly found, others may be fairly inferred which will support the judgment, such inference will be drawn. Staley v. Fazel Bros. Co., 247 Iowa 644, 647, 75 N.W.2d 253, 255, and citations.

Findings of the commissioner should be construed even more liberally than those of a court. Section 86.18 provides the commissioner and his deputies shall not be bound by technical or formal rules of procedure. Stice v. Consolidated Indiana Coal Co., supra, 228 Iowa 1031, 1041, 291 N.W. 452, holds this statute applies to findings of a deputy commissioner.

71 C. J., Workmen's Compensation Acts, section 1061, thus states the rule: "A finding of the ultimate facts is sufficient to sustain an award and it is not necessary to set forth the minor facts leading to the determination of the ultimate one."

The sufficiency of findings of fact in workmen's compensation matters is extensively annotated in 146 A. L. R. 123.

As previously suggested, the stronger attack defendant makes on the deputy commissioner's order is that there is not sufficient competent evidence to warrant it. There is clearly sufficient testimony that at the time of the hearing plaintiff was suffering from permanent partial disability of at least ten per cent. And by this we mean industrial disability—reduction of earning capacity, not mere functional disability. Dailey v. Pooley Lbr. Co., 233 Iowa 758, 765, 10 N.W.2d 569, 573, and citations.

Dr. W. D. Haufe, who attended plaintiff in the Bloomfield hospital in July and August 1954, testified: "In my opinion Mr. Rose is incapacitated, percentage-wise, from earning due to his present condition of, I would say, thirty per cent." Dr. F. L.

Nelson, who examined plaintiff, said, "I think Mr. Rose has a permanent partial disability from an industrial standpoint." There is evidence plaintiff's wages have been reduced by more than ten per cent, as a result of his disability. There is much other testimony which supports the deputy's finding of permanent partial disability of ten per cent, or even more. We need not mention it.

■ Of course proof of permanent partial disability of ten per cent is insufficient to warrant the award. Plaintiff has the burden also to show such disability resulted from the injury of July 7, 1953. Oldham v. Scofield & Welch, supra, 222 Iowa 764, 768, 266 N.W. 480, 269 N.W. 925; Stice v. Consolidated Indiana Coal Co., supra, 228 Iowa 1031, 1041, 291 N.W. 452; 71 C. J., Workmen's Compensation Acts, section 1423.

■ There is evidence plaintiff had osteoarthritis from a time prior to his injury and defendant contends any disability at the time of the hearing was caused by the disease, not the injury. While plaintiff was not entitled to compensation for the results of a pre-existing disease (Code section 85.61, 5c), mere existence of the disease at the time of the injury is not, as defendant concedes, a defense. If plaintiff was diseased and his condition was aggravated, accelerated, worsened or "lighted up" by the injury so it resulted in the disability found to exist, plaintiff was entitled to recover. Hanson v. Dickinson, 188 Iowa 728, 176 N.W. 823, and citations; Farrow v. What Cheer Clay Products Co., 198 Iowa 922, 927, 200 N.W. 625; Fraze v. McClelland Co., 200 Iowa 944, 205 N.W. 737; Belcher v. Des Moines Electric Light Co., 208 Iowa 262, 225 N.W. 404; Shepard v. Carnation Milk Co., 220 Iowa 466, 469, 262 N.W. 110; annotations 19 A. L. R. 110, 28 A. L. R. 209, 60 A. L. R. 1299.

■ We think there is substantial evidence, more than a scintilla (see Dailey v. Pooley Lbr. Co., supra, 233 Iowa 758, 765, 10 N.W.2d 569, 573), to support the finding plaintiff's disability resulted from the injury.

Doctor Haufe, previously referred to, testified X rays taken of plaintiff's spine in July 1954 "showed a condition of Mr. Rose's back at the present time that an injury had been sustained at some time in the dorsal spine. * * * I think the condition of his

spine has a great deal of effect upon his ability to work * * *. I think it would limit his ability to do ordinary manual labor. * * * my conclusion is that his condition is the result of trauma. I am not able to determine, however, when the trauma occurred. I would think it could not have occurred less than six months before the examination but it might have occurred six years before." Doctor Haufe went on to say the condition he found in plaintiff "could have been caused" by such an injury as plaintiff testified he suffered on July 7, 1953.

Doctor Nelson, also previously referred to, said, "It is possible his condition which I found could have been caused by an injury in July, 1953."

Plaintiff testified he never had any trouble with his back before his injury on July 7, never had any previous pain or suffering in his back, never had an injury to his back he knew of prior to July 7, had never before been unable to do heavy work—that is all he ever did. "I can't do the same type of work now I could before the injury. If I did I wouldn't do it but a short time. Now the type of work I am doing, I have pain in my back the time I do it. * * * The work I am doing now tires me more than the heavier work I was doing in 1953."

It is perhaps unnecessary to refer to testimony for defendant. However, Dr. Kenneth E. Lister and Dr. S. F. Singer testified the X rays taken of plaintiff's spine in 1953 and 1954 showed little if any progression of an arthritic condition revealed by X rays taken December 27, 1951. These earlier X rays were taken when plaintiff complained of trouble with his chest and X rays of the chest also revealed a portion of the spine. There is nothing to refute plaintiff's evidence he never consulted a doctor regarding his spine before July 1953.

Based on the claimed similarity of the different X rays, Doctor Singer expressed the opinion plaintiff's injury could not have caused his arthritic condition. The doctor admitted, however, "Any osteoarthritis is a condition which is very sensitive to the slightest injury. * * * It could have been an injury in 1953 that affected this condition that would not show on the X ray * * *." And Doctor Lister conceded, "There is a difference between what equally competent doctors can see on an X-ray film."

 We are aware of the rule that medical testimony it is possible a given injury caused a subsequent disability is insufficient, standing alone, to establish the causal relation. Numerous decisions to such effect, including several of our own, are cited in the annotation 135 A. L. R. 516, 517. See, however, pages 532 et seq. But the deputy commissioner's finding plaintiff's disability was caused by the injury does not rest alone on medical evidence this was possible, although Doctor Nelson so testified.

Doctor Haufe said in substance the X rays showed plaintiff's dorsal spine had suffered a traumatic injury and his disability "could have been caused" by such an injury as plaintiff testified he received in July 1953. According to plaintiff that is the only injury to his back he ever received, his back never troubled him before and, in effect, never ceased to trouble him thereafter although the work he did was much lighter than before. There is nothing to refute plaintiff's evidence. If the combined testimony of Doctor Haufe and plaintiff is believed—and of course the deputy commissioner had a right to believe it—plaintiff's disability *was* caused by the injury of July 7.

Upon evidence generally similar to that here we upheld compensation awards in Fraze v. McClelland Co., supra, 200 Iowa 944, 205 N.W. 737; Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 214 N.W. 585; Nellis v. Quealy, 237 Iowa 507, 21 N.W.2d 584.

Decisions from other jurisdictions upholding awards on evidence much like that here include: DeFilippo's Case, 284 Mass. 531, 188 N.E. 245, 247; Josi's Case, 324 Mass. 415, 86 N.E.2d 641; Schroeder v. Western Union Telegraph Co., Mo. App., 129 S.W.2d 917, 922; Drew v. Industrial Comm., 136 Ohio St. 499, 26 N.E.2d 793; Glen L. Wigton Motor Co. v. Phillips, 163 Okla. 160, 21 P.2d 751; Hanlon v. Gulf Refining Co., 115 Pa. Super. 315, 175 A. 724; Pfeiffer v. North Dakota Workmen's Compensation Bureau, 57 N. D. 326, 221 N.W. 894; Hartford Acc. & Indem. Co. v. Industrial Comm., 64 Utah 176, 228 P. 753.

DeFilippo's Case, supra, concisely states (at page 535 of 284 Mass., page 247 of 188 N.E.) what has been frequently decided: "Expert testimony that an accident would be an adequate cause of subsequent disease has been held 'sufficient, taken in connec-

tion with the plaintiff's testimony that his health was good before the accident.' Sullivan v. Boston Elevated Railway Co., 185 Mass. 602, 606, 71 N.E. 90, 91. See also [other citations]."

In the Sullivan case, supra, the doctor "testified 'that such a fall * * * could be an adequate cause of the appendicitis.' " (Page 606 of 185 Mass., page 91 of 71 N.E.)

Schroeder v. Western Union Telegraph Co., supra, uses this language applicable here (at page 922 of 129 S.W.2d) : "The medical testimony to the effect that such a blow to the claimant's head * * * could be the precipitating cause * * * of his condition, coupled with the circumstances shown in evidence that the claimant was not afflicted with any such condition prior to the time he met with the accident * * * constitute a sufficient basis to warrant the reasonable inference drawn by the commission that claimant's present condition * * * resulted from the accident * * *."—Affirmed.

All JUSTICES concur.